**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0316-19

SHIRLEY WILSON,

     Plaintiff-Appellant,

v.

ELVIN ORTIZ-PONCE,
RANDY'S PRO
LANDSCAPING SERVICES,
LLC, and MATTHEW MIZERAL,

     Defendants,

and

NEW JERSEY
MANUFACTURERS
INSURANCE,

     Defendant-Respondent.

_____

Argued January 13, 2021 – Decided March 25, 2021

Before Judges Whipple, Rose, and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-4179-18.

Kristofer Petrie argued the cause for appellant (Brach Eichler, LLC, attorneys; Kristofer Petrie, on the briefs).

Daniel J. Pomeroy argued the cause for respondent (Pomeroy Heller & Ley, LLC, attorneys; Daniel J. Pomeroy and Karen E. Heller, on the brief).

PER CURIAM

On June 29, 2017, plaintiff Shirley Wilson's car was rear-ended while stopped on Route 24 in Springfield. Defendant, Elvin Ortiz-Ponce, working for Randy's Pro Landscaping Services, LLC (Randy's), drove his truck and trailer into both plaintiff's car and another vehicle, driven by Matthew Mizerak. Plaintiff alleges severe injuries to her neck that required surgery. According to plaintiff, Mizerak also needed knee surgery because of the accident.

Defendants Ortiz-Ponce and Randy's were insured by a Progressive Commercial $100,000 Combined Single Limit (CSL), or "self-eroding," policy. Having a CSL means the $100,000 in coverage must be split among claimants for bodily injury and property damage. At the time, plaintiff was driving her own vehicle and had $100,000 in underinsured motorist coverage (UIM) through New Jersey Manufacturers Insurance (NJM). She filed her original negligence complaint in Middlesex County against Ortiz-Ponce, Randy's, and Mizerak, on April 9, 2018, then added a UIM count against NJM in her amended complaint

on June 4, 2018. Shortly thereafter, she discovered Mizerak was also a plaintiff in a lawsuit against the same defendants in Union County.

The cases were consolidated, and Wilson's case was transferred to Union County. Mizerak settled with Ortiz-Ponce and Randy's under the Progressive CSL policy. Wilson settled with Ortiz-Ponce and Randy's for the $28,869 sum that remained on the CSL policy.

On February 25, 2019, plaintiff sent NJM a letter, advising she intended to accept Progressive's $28,869 settlement offer, and prosecute her UIM claim against it. Plaintiff was offered $28,869 from Progressive, essentially for her bodily injury claims, because her and Mizerak's property damage were taken out first: $18,631 and $4,386.23 respectively, and he received a $48,113 payment for his bodily injuries.

NJM moved for summary judgment and on August 16, 2019, the court granted the motion. The motion judge noted that the UIM limits of plaintiff's NJM policy were $100,000, identical to the tortfeasor's liability limits, and thus recognized that plaintiff does not have a valid UIM claim under N.J.S.A. 17:28-1.1(e). This was so even though plaintiff's recovery under the tortfeasor's liability policy was less than the full limit. This appeal followed.

A-0316-19

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider, as the trial judge did, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

We review issues of law de novo and accord no deference to the trial judge's legal conclusions. See Templo Fuente De Vida, 224 N.J. at 199 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)) ("When no issue of fact exists, and only a question of law remains, [we] afford[] no special deference to the legal determinations of the trial court.").

A-0316-19

Plaintiff argues she has a viable claim for UIM coverage. She does not. N.J.S.A. 17:28-1.1(e) states:

> A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery.

Under N.J.S.A. 17:28-1.1(e)(1), whether a vehicle is underinsured requires a dollar-for-dollar comparison of the limits of UIM coverage for each claimant to the sum of the limits of all liability insurance policies available to the party or parties who caused the accident that resulted in plaintiff's bodily injury or property damage. Unfortunately, notwithstanding the severity of her injuries, it is only when the limits of the UIM coverage exceed the total limits of all liability coverage that a claim for UIM benefits exists at all. See French v. N.J. Sch. Bd. Ass'n Ins. Grp., 149 N.J. 478, 484-85 (1997). Here, Ortiz-Ponce and Randy's liability coverage was $100,000, and plaintiff's chosen UIM limit through her own NJM policy was also $100,000; thus, the formula prescribed by N.J.S.A. 17:28-1.1(e)(1) yields no UIM coverage for her.

We have previously addressed whether a tortfeasor becomes underinsured when their policy must be split between two or more claimants, leaving a

necessarily reduced recovery. See Tyler v. N.J. Auto. Full Ins. Underwriting Ass'n, 228 N.J. Super. 463, 466-67 (App. Div. 1988) (citing Wert v. Picciano, 189 N.J. Super. 178 (Law Div. 1982)) ("[T]here is no recovery at all from the [UIM] coverage unless it has higher limits than the liability coverage.").

In Tyler, the tortfeasor had a per-accident limit of $50,000. Id. at 465. While driving, he hit a car containing four family members, each covered by $15,000 in UIM. Ibid. Two family members settled for $19,000 and $16,500. Ibid. The other two settled for $9,500 and $5,000. Ibid. The two family members with lower settlements pursued the remainder, up to $15,000 each, minus their settlements, against their UIM carrier. Ibid. The trial court allowed their recovery, but we reversed. Id. at 467-68. The situation is exactly plaintiff's claimed injustice, which has been re-affirmed multiple times:

> The statute produces the same result if there is one injured claimant or many, or if the amount of damages exceed the tortfeasor's liability limits, or even if multiple claims against one tortfeasor are, because of his liability limits, settled for amounts which are individually less than the underinsured motorist coverage available from the claimants' policy.
>
> [Id. at 466.]

In Harmon v. New Jersey Automobile Full Insurance Underwriting Ass'n, 268 N.J. Super. 434 (App. Div. 1993), the claimant had the same limits as

6

defendant, and argued defendant was underinsured because there were multiple claimants. Id. at 435. This court was clear in Harmon, as well: "[w]e conclude that the tortfeasor is not an underinsured [motorist] in such circumstances, and the injured claimants cannot receive [UIM] benefits." Ibid. In finding so, this court explained: "[t]he comparison of policy limits required by N.J.S.A. 17:28-1.1(e) is determined by the 'actual tortfeasor's policy limits and not by the settlement amounts paid to the injured party.'" Id. at 438 (quoting Gold v. Aetna Life & Casualty Ins. Co., 233 N.J. Super. 271, 277 (App. Div. 1989)).

The motion judge here explained the decision, despite his own hesitations about the result:

> The Tyler case and the Harmon case are now a quarter of a century old. However, the statute has not changed. And the . . . [UIM] is the statutory creation.
>
> I confess that I find the results I am compelled to reach seem unfair and inequitable. Plaintiff paid for $100,000 of [UIM] coverage. As a result of several claims against tortfeasor's policy, she will not be able to recover anywhere near [the] $100,000 of UIM coverage that she paid for. I am obligated to follow the law as defined by the Appellate Division, our Supreme Court and the statutes. Because the tortfeasor's policy of $100,000 is not less than Ms. Wilson's UIM policy limit, I must grant summary judgment to defendant [NJM] on these facts.

7

Simply put, Randy's and Ortiz-Ponce were not underinsured, having a matching $100,000 policy limit. We "'should not engage in a strained construction' in order to find coverage." <u>Rosario v. Haywood</u>, 351 N.J. Super. 521 (App. Div. 2002) (quoting <u>Longobardi v. Chubb Ins. Co. of N.J.</u>, 121 N.J. 530, 537 (1990)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0316-19